**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0763-24

SL 10 PARK PLACE, LLC and SL
MANAGEMENT GROUP, LLC,

     Plaintiffs-Respondents,

v.

UTICA NATIONAL INSURANCE
GROUP and UTICA MUTUAL
INSURANCE COMPANY,

     Defendant-Appellant,

and

JEFFREY FOGARTY and
ELIZABETH FOGARTY, CLIFTON
ELEVATOR SERVICE COMPANY,
INC., and FOGARTY BROTHERS,
INC., d/b/a SAFEWAY VAN LINES,

     Defendants-Respondents.

---

Argued March 4, 2026 – Decided July 15, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1293-22.

Robert W. Mauriello, Jr. argued the cause for appellant (Gimigliano Mauriello & Maloney, PA, attorneys; Robert W. Mauriello, Jr., on the briefs).

Brian L. Calistri argued the cause for respondents SL 10 Park Place, LLC and SL Management Group, LLC (Calistri McLaughlin LLC, attorneys; Brian L. Calistri and Courtney Rodgers, on the brief).

David Blee argued the cause for respondent Clifton Elevator Service Company, Inc. (Goetz Schenker Blee & Wiederhorn, LLP, attorneys; Laura A. Lelio and David Blee, on the brief).

PER CURIAM

In this insurance coverage matter, Utica Mutual Insurance Company[1] (Utica) challenges trial court orders which found (1) plaintiffs were additional insureds under the Utica policy, requiring Utica to defend and indemnify them; and (2) Utica was responsible to reimburse plaintiffs for their defense costs in the underlying tort action and in this coverage action. We affirm.

I.

Plaintiffs SL 10 Park Place, LLC and SL Management Group, LLC owned a commercial building with warehouse space. They held commercial general

---

[1] Utica was incorrectly pled as "Utica National Insurance Group."

A-0763-24

liability insurance policies with Travelers Insurance Company and Chubb. Plaintiffs leased space on the second floor of the building to Fogarty Brothers for their piano moving company. The Lease required Fogarty Brothers to obtain an insurance policy in the amount of $1 million naming plaintiffs as additional insureds. Fogarty Brothers obtained insurance from Utica for that purpose.

In 2020, Jeffrey Fogarty sustained serious injuries when he fell into the elevator shaft. He filed a complaint against plaintiffs and Clifton Elevator Service Company, Inc.[2], alleging various claims of negligence (the tort action). Plaintiffs filed a third-party complaint against Fogarty Brothers; Clifton and Fogarty Brothers asserted crossclaims and counterclaims against plaintiffs.

Travelers tendered plaintiffs' defense to Fogarty Brothers' insurer, Utica; and Clifton's insurer, Great American Insurance Company (GAIC). Utica denied the tender, stating plaintiffs were not additional insureds under its policy. GAIC undertook plaintiffs' defense under a reservation of rights.

Thereafter, plaintiffs instituted this declaratory judgment action seeking an order that Utica owed plaintiffs indemnification and a defense in the tort action. Utica filed an answer with a counterclaim and crossclaim, also seeking

---

[2]  Clifton had a contract with plaintiffs to service, repair and maintain the elevators at the premises.

A-0763-24

a declaration of the parties' rights and obligations and an allocation of costs in the tort action.

Plaintiffs moved for partial summary judgment on the indemnification and defense issues; and seeking dismissal of Utica's counterclaim and crossclaim. On May 26, 2023, the trial court found (1) plaintiffs were additional insureds under the Utica policy; (2) Utica was required to defend plaintiffs in the tort action; and (3) plaintiffs were entitled to reimbursement from Utica of the entirety of their defense costs in connection with the tort action. The court denied the motion to dismiss Utica's counterclaim and crossclaim.

On November 6, 2023, the parties to the tort action agreed upon a settlement and entered a stipulation of dismissal to dismiss all claims and crossclaims with prejudice. There was no adjudication or admission of liability by any party. The $8 million gross settlement was apportioned among the parties as:

> 1. [GAIC] contributing $1 million pursuant to its policy to Clifton Elevator Services, $500,000 on behalf of Clifton Elevator, its named insured, and $500,000 on behalf of [plaintiffs],
>
> 2. Liberty Insurance Underwriters paid $4.75 million to the settlement as Clifton Elevator Services [sic] excess carrier,

4

3. Travelers Insurance Company, as carrier for [plaintiffs], paid $1 [m]illion to the settlement,

4. Chubb, the excess carrier for [plaintiffs], paid $1.25 [m]illion to the settlement.

The parties agreed to adjudicate any issues left unresolved by the court's prior orders in a bench trial. Following the trial, the court entered a judgment and accompanying statement of reasons on September 30, 2024, ordering Utica to pay the full amount of the defense costs in the tort action and the costs in this coverage action, totaling $647,939.78; and to indemnify plaintiffs for $1 million.

II.

On appeal, Utica contends the court erred in finding it had a duty to indemnify and defend plaintiffs and in ordering Utica to pay all of the defense costs in the tort action.

A.

To provide context for the arguments, we set forth the applicable policy provisions.

Section I of the Utica Policy defined three discrete Coverages: Coverage A extended to **"BODILY INJURY AND PROPERTY DAMAGE LIABILITY"**; Coverage B extended to **"PERSONAL AND ADVERTISING**

**INJURY LIABILITY**"; and Coverage C extended to "**MEDICAL PAYMENTS**."

Section II of the policy, "**WHO IS AN INSURED**," defined an insured as any individual or entity "designated in the Declarations." In Section 11 of a supplemental endorsement, the Utica Policy extended this definition of an insured to include:

> **a. Additional Insureds—By Contract, Agreement or Permit**
>
> (1) Any person or organization with whom you have entered into a written contract, agreement or permit requiring you to provide insurance such as is afforded by this Commercial General Liability Coverage Form will be an additional insured, but only:
>
>> (a) To the extent that such additional insured is held liable for acts or omissions committed by you or your subcontractors during the performance of your ongoing operations for the additional insured.
>>
>> (b) With respect to property owned or used by, or rented or leased to, you.

The policy also provided, where these definitions resulted in coverage for multiple insureds at once:

A-0763-24

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

Section I, Coverage A, Subsection 1.a, "**Insuring Agreement**," provided Utica "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Coverage A was subject to exclusions 2.a through 2.q.[3] Relevant to this appeal, Section I, Coverage A, Subsection 2.d excluded any "obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Section I, Coverage A, Subsection 2.e excluded coverage for bodily injury to:

> **(1)** An "employee" of the insured arising out of and in the course of:
>
>> **(a)** Employment by the insured; or
>>
>> **(b)** Performing duties related to the conduct of the insured's business; . . .

---

[3] None of Coverage A's exclusions explicitly adopted exclusions from Coverage B or C. Coverage C adopted all Coverage A's exclusions.

. . . .

> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Additionally, Section 11 of the supplemental endorsement excluded coverage under Coverage A for claims related to: "The independent acts or omissions of such additional insured."

Section IV, Subsection 4.a, "**Other Insurance . . . Primary Insurance**," provided that where Utica had Coverage A obligations coextensive with "other valid and collectible insurance . . . available to the insured," the Utica Policy would be "primary" subject to limitations in Subsection 4.b, "**Excess Insurance**." The excess insurance subsection provided the Utica Policy would be excess over any "other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." Additionally:

> **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

8

A-0763-24

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

> **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

> **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

B.

Matters of contract interpretation are questions of law that we review de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018). We also follow well established principles of law regarding insurance contract interpretation.

An insurer's duty to indemnify exists "with respect to occurrences for which the policy provides coverage." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 455 (App. Div. 2018) (quoting Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984)). Principles of contract law guide the analysis of disputes over the scope of coverage. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960). As "with any other contract," the court searches an

9

insurance policy "broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purpose thereof." Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 340 N.J. Super. 223, 234 (App. Div. 2001).

The policy "as written" guides the analysis. Kampf, 33 N.J. at 43. Words in the "policy should be given their ordinary meaning." Duddy v. Gov't Emps. Ins. Co., 421 N.J. Super. 214, 218 (App. Div. 2011) (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990)). "The court is bound to enforce a clear and unambiguous policy." Erdo v. Torcon Constr. Co., 275 N.J. Super. 117, 120 (App. Div. 1994). It will not "write a better policy for the insured than the one purchased." Motil v. Wausau Underwriters Ins. Co., 478 N.J. Super. 328, 336 (App. Div. 2024) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016)).

That said, insurance policies are contracts of adhesion. Id. at 337. Therefore, the policies are "subject to special rules of interpretation" in addition to the standard principles of contract. Duddy, 421 N.J. Super. at 218 (quoting Longobardi, 121 N.J. at 537). These additional rules include that

> a broad and liberal view should be taken so that the policy is construed in favor of the insured. . . . Additionally, it is a well-settled principle that purchasers of insurance are entitled to the broad

measure of protection necessary to fulfill their reasonable expectations. In the language of our Supreme Court, their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow.

[Sears Roebuck & Co., 340 N.J. Super. at 235 (citations and internal quotation marks omitted) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)).]

C.

Against this backdrop we turn to Utica's contentions.

Utica's Duty to Indemnify

Utica asserts the court erred in several respects in finding Utica had a duty to indemnify plaintiffs under its policy. First, it claims plaintiffs were not additional insureds under the Utica policy because the lease did not require Fogarty Brothers to indemnify or insure plaintiffs for the injuries Fogarty sustained. Second, the employee and worker's compensation exclusions and independent acts or omissions exclusion applied to preclude coverage.

We address each in turn.

1. Additional Insureds

Article 7.A(b) of the lease required plaintiffs to maintain "commercial general public liability insurance" applicable to "claims arising out of liability

11

for bodily injury" on the premises. Article 7.B(i) required Fogarty Brothers, as tenant, to purchase "commercial general liability insurance, including personal injury . . . occurring in or about the Premises." Article 7.B(a) required Fogarty Brothers to name plaintiffs "and any party holding an interest to which this Lease may be Subordinated as additional insured's [sic]." Article 7.B(f) required that insurance policy to "contain a severability of insured parties provision."

The only limitation on the insurance requirement under Article 7 is Article 7.C, entitled "Waiver of Right of Recovery," which provided plaintiffs and Fogarty Brothers would not "be liable to one another or to any insurance company" for loss or damage to "tangible property located" on the premises, including the premises itself and the land on which it stood.

Section 11 of the Utica policy's supplemental endorsement stated that any organization with whom the named insured had "entered into a written contract, agreement or permit requiring" that named insured "to provide insurance" would "be an additional insured . . . [w]ith respect to property owned or used by, or rented or leased to" the named insured.

Thus, the plain language of Article 7.B in the lease required Fogarty Brothers to insure itself for personal injury occurring on the premises and name plaintiffs as additional insureds on that policy. Section 11.a.(1)(b) of the Utica

A-0763-24

Policy's supplemental endorsement gave plaintiffs additional insured status with respect to the leased premises. Coverage A explicitly stated insureds were entitled to indemnification for "damages because of 'bodily injury,'" without providing any abrogation of either that additional insured status or the additional insured's scope of coverage.

Given the clear language of these provisions, the court did not err in holding plaintiffs were additional insureds under the Utica policy. See Erdo, 275 N.J. Super. at 120 ("The court is bound to enforce a clear and unambiguous policy.").

Utica further claims Article 7 of the lease limited Fogarty Brothers' obligation to procure additional insured coverage only to those claims otherwise mentioned in the lease and that Article 23 of the lease does not include such obligation for the tort action.

Article 23 of the Lease was entitled "**RELEASE AND INDEMNIFICATION**" and applied "to claims" arising from use of the premises, its "steps, ladders, ramps, and/or loading docks." Article 23.B of the lease released plaintiffs "from any claim or cause of action by" Fogarty Brothers "for any . . . personal injury or property damage unless same are due to" plaintiffs' "acts or negligence." Article 23.C provided Fogarty Brothers "shall

13

defend" and "indemnify" plaintiffs "from any claim or cause of action by any person, other than" Fogarty Brothers "or any person or entity holding" its interest under the lease, for any "personal injury" claim "unless same are due to the acts or negligence of" plaintiffs, "or its employees or its agents."

Utica contends Article 7 is interpreted by reference to these provisions in Article 23. The lease terms do not support that argument. The Articles do not reference one another at all. Moreover, none of Article 23's provisions alter Article 7.B(a)'s clear requirement that Fogarty Brothers name plaintiffs as additional insureds.

Utica further contends that since Fogarty did not assert any claims against Fogarty Brothers, which ultimately did not make any settlement payments, Fogarty cannot hold Utica vicariously liable, particularly because Fogarty Brothers had "their own liability insurance."

It is of no consequence that Fogarty did not seek damages from Fogarty Brothers. Disputes over policy coverage are analyzed with reference to the contract between the parties, Sears Roebuck & Co., 340 N.J. Super. at 234, not actions taken subsequent to contract formation. Here, Section 11.a.(1)(b) of the supplemental endorsement gave plaintiffs additional insured status with respect to the leased premises. Whether Fogarty later filed suit or sought damages from

A-0763-24

Fogarty Brothers has no bearing on whether plaintiffs held additional insured status under the Utica policy and were owed defense and indemnification under Coverage A.

2. Employee and Workers Compensation Exclusions

Utica argues that, because it is "a third-party liability" insurer, the court erred by declining to apply certain exclusions in the policy that barred a duty to indemnify Utica's "own policyholders," such as Fogarty. According to Utica, the worker's compensation exclusion and "employer's liability exclusion" in the policy exclude Fogarty's claim against plaintiffs as "vicariously liable for" Fogarty's employer's "alleged negligence."

Section I, Coverage A, Subsection 1.a provided Utica "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Section I, Coverage A, Subsection 2.d excluded any "obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Section I, Coverage A, Subsection 2.e excluded coverage for bodily injury to:

> **(1)** An "employee" of the insured arising out of and in the course of:
>
> **(a)** Employment by the insured; or

A-0763-24

**(b)** Performing duties related to the conduct of the insured's business; . . .

. . . .

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

In considering Utica's argument that it "had no obligation to pay indemnity, including medical expenses, to any of its own policyholders," the trial court relied on Erdo, 275 N.J. Super. at 122, and found the employer's liability exclusion and worker's compensation bars did not apply because Fogarty's claim was against plaintiffs, not Fogarty's employer.

Exclusionary clauses permit the insurer to delimit coverage in circumstances where coverage might otherwise exist. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247-49 (1979). These clauses enjoy a presumption of validity if they are "specific, plain, clear, prominent and not contrary to public policy." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 528 (2012)). However, exclusionary clauses are "construed narrowly." Motil, 478 N.J. Super. at 337 (quoting Merck & Co. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 434 (App. Div. 2023)). "The primary object of all insurance is to insure." Erdo, 275 N.J. Super.

A-0763-24

at 120 (quoting <u>Boswell v. Travelers Indem. Co.</u>, 38 N.J. Super. 599, 605 (App. Div. 1956)). Thus, the "insured is entitled to protection to the full extent tha[t] any reasonable interpretation of" the exclusion "will permit." <u>Ruvolo v. Am. Cas. Co.</u>, 39 N.J. 490, 498 (1963). Courts will "apply the meaning that supports coverage rather than the one that limits it." <u>Norman Int'l, Inc.</u>, 251 N.J. at 552 (quoting <u>Mem'l Props., LLC</u>, 210 N.J. at 528).

The burden "to bring the case within the policy exclusion" rests with the insurer, not the insured. <u>Ibid.</u> (quoting <u>Burd v. Sussex Mut. Ins. Co.</u>, 56 N.J. 383, 399 (1970)). The insured should have the benefit of a "favorable" construction and if the language of the exclusionary clause is ambiguous, the one that permits recovery should be adopted. <u>Md. Cas. Co. v. N.J. Mfrs. (Cas.) Ins. Co.</u>, 48 N.J. Super. 314, 326 (App. Div. 1958).

In sum, principles of insurance policy interpretation "mandate broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations." <u>Duddy</u>, 421 N.J. Super. at 218 (quoting <u>Sealed Air Corp. v. Royal Indem. Co.</u>, 404 N.J. Super 363, 375 (App. Div. 2008)).

Under these principles, this court has found where named insureds and additional insureds are separable under one policy, an employee or worker's compensation exclusion will not bar coverage for one insured's employee's claims against another insured. Erdo, 275 N.J. Super. at 119-23.

In Erdo, Torcon Construction Company (Torcon) "was the general contractor in charge of building an addition to a shopping mall," and engaged Tectonic Construction Company (Tectonic) as subcontractor. Id. at 119. Pursuant to their contract, Tectonic obtained insurance against claims for personal injury and named Torcon as an additional insured. Ibid. Erdo, a Tectonic employee, filed suit against Torcon after an injury on the job. Ibid. Tectonic's insurer refused to cover or defend Torcon with respect to Erdo's lawsuit based on this exclusion:

> **Exclusion j.** [The policy shall not apply] to bodily injury to <u>any employee of the insured</u> arising out of and in the course of his employment by <u>the insured</u> or to any obligation of <u>the insured</u> to indemnify another because of damages arising out of such injury, but this exclusion does not apply to liability assumed by the insured under an incidental contract.
>
> [Ibid. (Emphasis and alteration in original).]

The trial court held the denial was proper. We reversed. Id. at 123. This court noted the language of the exclusion "must be construed strictly against

18

. . . the writer, and favorably toward Torcon, the insured." Id. at 121. We also noted the "severability of interests among multiple insureds" contained within the policy, stating "[t]he severability clause . . . in effect creates multiple policies with identical terms but different insureds." Id. at 121, 123. Thus, "[t]he clause requires that the policy be read as if each named insured is the only insured." Id. at 123. This court construed the exclusion to provide that the policy would not cover "injury to any employee of Torcon." Ibid. However, "the exclusion clearly does not bar coverage for the action filed by" Erdo, as an employee of Tectonic. Ibid.

In Argent v. Brady, this court cited Erdo and prior precedent, Maryland Casualty Co. v. N.J. Manufacturers Casualty Insurance Co., 28 N.J. 17, 19 (1958), together in a discussion of "the distinction between 'the' and 'an' insured" in the language of insurance policies. 386 N.J. Super. 343, 351-353 (App. Div. 2006). Argent explained that, in particular where an insurance policy contains a severability clause, the phrase "'an' insured" connotes "'any' insured," whereas "'the' insured" connotes a specific, single insured. Id. at 351-52, 351 n.7. Therefore, references to "the" insured in the Erdo and Maryland Casualty Co. policies' exclusions compelled that those exclusions, construed narrowly, would apply only where the plaintiff had an employment relationship with the insured

A-0763-24

defendant against whom the plaintiff brought claims. Erdo, 275 N.J. Super. at 120-23; Maryland Cas. Co., 28 N.J. at 19; Argent, 386 N.J. Super. at 351-52.

Here, the Utica policy severed its insureds in the "**Separation Of Insureds**" subsection which provided the policy applied "[s]eparately to each insured against whom claim is made or 'suit' is brought." Fogarty was an employee of Fogarty Brothers, not plaintiffs. Therefore, Erdo is directly on point to the facts presented here to support the trial court's conclusion that the exclusions were not applicable.

Next, Utica argues its policy "expressly states that it has no obligation to pay medical expenses for 'bodily injury' to 'any insured' or to 'a person injured on that part of [the] premises you own or rent that the person normally occupies.'" Because Fogarty Brothers rented the premises and "Fogarty routinely used the freight elevator" where he ultimately sustained injury, Utica argues the policy excluded the "obligation to pay for any" of Fogarty's "medical expenses."

In proffering this argument, Utica relies on the Medical Payments provision under Coverage C. However, the trial court found Utica owed coverage under Coverage A. Utica does not explain why we should apply Coverage C's exclusions to the construction of Coverage A and nothing in

Coverage A provided it was subject to exclusions under Coverage C. In addition, it is unclear why plaintiffs' settlement payment to Fogarty would constitute Fogarty's own medical expenses. Utica has not met its burden "to bring the case within the policy exclusion," Norman Int'l, Inc., 251 N.J. at 552 (quoting Burd, 56 N.J. at 399). Therefore, we find the argument meritless.

### 3. Independent Acts/Omissions Exception

Utica also asserts the court erred by declining to apply another exclusion—for an additional insured's "own independent acts or omissions." Utica contends it had no obligation to indemnify plaintiffs for their sole acts of negligence under its policy or the lease, as its coverage is limited to vicarious liability claims only.

Section 11 of the supplemental endorsement excluded coverage under Coverage A for claims related to: "The independent acts or omissions of such additional insured." In addressing the exclusion, the court noted there was no "further definition or clarification anywhere in the policy." The court turned to precedential case law and found Utica was not relieved of its duty to defend additional insureds. Citing Rosario ex rel. Rosario v. Haywood, 351 N.J. Super. 521, 532-34 (App. Div. 2004), the court noted where an "additional insured faced liability beyond its own negligence based on the conduct of its co-

21

defendant and sub-contractor," this court held an exclusion for "the 'negligence of the additional insured'" did not relieve the insurer of its duty to defend.

As stated, here the court found plaintiffs were additional insureds under the Utica policy. Fogarty's claims against plaintiffs included multiple theories of liability, including negligence; joint and several liability; "vicarious liability through common law indemnity;" and "contractual indemnity." It is evident that several of these claims were separate from any alleged sole acts of plaintiffs' negligence.

The trial court concluded that "the lack of definition as to what Utica intended in its purported exclusion of independent acts of the additional insured," considered in light of the "principle that all such ambiguities must be resolved against the drafter and in favor of coverage;" and in light of the "various liabilities in this matter that do not relate to, or flow from," plaintiffs' "independent acts" or sole negligence compelled the conclusion that the exclusion did not apply.

The trial court properly relied on Rosario to reach its conclusion. There, a Board of Education (Board) contracted with University Bus Company to transport students. 351 N.J. Super. at 526. The contract required University Bus to obtain "automobile public liability insurance" naming the Board as an

22

insured.  Id. at 528.  The contract also stated University Bus would "defend and indemnify" the Board for personal injury claims "arising from or out of actions of the transportation contractor occasioned wholly or in part by any act or omission to act of the transportation contractor, its agent, its subcontractor, or its employees."  Ibid. (Emphasis omitted).  University Bus purchased insurance with the following provision:

> Additional insured shall include any entity . . . to whom the named insured is obligated by a written "insured contract" or agreement to provide insurance: however, this coverage shall only apply with respect to liability arising out of operations performed by or on behalf of the named insured.  Further, this coverage shall not apply to damages arising out of the negligence of the additional insured unless such coverage is required in an "insured contract" with the additional insured and unless the "insured" shall become legally liable to pay for such damages through the enforcement of that contract.
>
> [Ibid.  (Emphasis omitted).]

The trial court construed the clause broadly, and found "it was the intent of the parties to confer coverage for liability arising from the Board's independent negligence."  Ibid.  We reversed.

We found the provision was not ambiguous, stating the policy provided that, subject to certain inapplicable exceptions, "coverage shall not apply to damages arising out of the negligence of the additional insured."  Id. at 528.

23

"Nowhere does the [parties' contract] require coverage for damages arising from the Board's independent negligence unrelated to the actual operation of the bus or its driver." Id. at 531. Accordingly, we concluded the policy covered the Board's "damages flowing from" the conduct of its subcontractors, but would not cover the Board's sole negligence. Id. at 532.

Therefore, under Rosario, where a policy expressly excludes coverage for an insured's sole negligence, the insurer could still be under a duty to that insured where the insured was potentially subject to liability under another theory, such as the negligence of another. Id. at 531-32. Although the policy language differed in Rosario from that present here, the word "independent" in the Utica exclusion compels the same result. "Independent" means not "associated with another" or "contingent on something else." Black's Law Dictionary 916 (12th ed. 2024). Vicarious liability arises from the relationship between multiple parties. Id. at 1096; see also Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 378 (2022) (finding that vicarious liability requires an employment relationship between two parties and a tortious act within the scope of employment). Joint and several liability is similarly pled where multiple parties are alleged to have contributed to a plaintiff's harm. See Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87 (2023). Because both theories definitionally

extend from liabilities associated with more than one party, they cannot pertain to one party independently. See Duddy, 421 N.J. Super. at 218 (holding words are given their ordinary meaning and exclusions are construed narrowly).

Since plaintiffs were subject to theories of liability unrelated to their sole negligence, and remained so until the entry of a settlement, the court did not err in concluding the independent acts and omissions exclusion did not apply. Utica had a duty to indemnify plaintiffs.

Duty to Defend

Utica contends the trial court erred in finding Utica had a duty to defend since it did not have a duty to indemnify plaintiffs.

The "obligation of an insurer is not limited to indemnity but is two-fold, including the duty to defend." Rosario, 351 N.J. Super. at 534. The duties "are closely related" because neither "exists except with respect to occurrences for which the policy provides coverage." Sears Roebuck & Co., 340 N.J. Super. at 242 (quoting Hartford Accident & Indem. Co., 98 N.J. at 22). It "is the 'obligation to indemnify, either actual or potential, which invokes the duty to defend.'" Ibid. (quoting Hartford Ins. Grp. v. Marson Constr. Corp., 186 N.J. Super. 253, 260 (App. Div. 1982)).

A-0763-24

Insurers have a duty to defend when a "complaint against the insured 'states a claim constituting a risk insured against.'" S.T. Hudson Eng'rs, Inc. v. Pa. Nat. Mut. Cas. Co., 388 N.J. Super. 592, 606 (App. Div. 2006) (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953)). "To determine whether an insurer has a duty to defend, the complaint is 'laid alongside the policy' to compare the allegations with the" policy coverage and determine whether there is any potentially covered claim which may result in a judgment "the insurer will be required to pay." Ibid. Facts "indicating potential coverage that arise during the resolution of the underlying dispute . . . may trigger the duty to defend." Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 274 (App. Div. 2008) (quoting SL Indus. Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 198 (1992)). "Accordingly, an insured need only show that the claim falls within the policy's coverage to demonstrate the insurer's duty to defend." Hebela v. Healthcare Ins. Co., 370 N.J. Super. 260, 269 (App. Div. 2004).

Where "multiple alternative causes of action are stated, the duty will continue until every covered claim is eliminated." Rosario, 351 N.J. Super. at 534 (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 174 (1992)). In addition, doubts regarding the duty resolve in the insured's favor. S.T. Hudson Eng'rs, Inc., 388 N.J. Super. at 606 (citing Voorhees, 128 N.J. at 173).

Fogarty's complaint alleged injuries due to a bodily injury on the premises, and this was within the scope of plaintiffs' additional insured coverage pursuant to Section 11.a.(1)(b) of the Utica policy, which required Fogarty Brothers to name plaintiffs as additional insureds with respect to the leased property. As discussed, Utica has not established that any exclusion in its policy applies to preclude coverage. Therefore, "the claim falls within the policy's coverage" sufficient "to demonstrate the insurer's duty to defend." Hebela, 370 N.J. Super. at 269.

Utica argues the court erred by finding Utica had a duty to defend without first determining whether Fogarty Brothers or Fogarty were comparatively or contributorily negligent.

Initially, we note there was no adjudication or admission of liability by any party in the tort action because the parties settled before trial. Regardless, a finding of actual comparative or contributory negligence is not necessary to trigger the duty to defend. An ultimate determination of fault or liability "is not the criterion" by which courts assess the existence of the duty; rather, "it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." Voorhees, 128 N.J. at 174 (emphasis added) (quoting Danek, 28 N.J. Super. at 77). The "obligation to defend is fixed when

a complaint is filed," not when liabilities are determined. <u>Hebela</u>, 370 N.J. Super. at 268. And the obligation is unchanged by the ultimate merits of the claim. <u>Rosario</u>, 351 N.J. Super. at 534 (citing <u>Voorhees</u>, 128 N.J. at 173-74). Fogarty's complaint triggered the duty because it alleged injuries within the scope of plaintiffs' additional insured coverage.

Utica further contends that plaintiffs are seeking "a double recovery of defense costs," because GAIC, Clifton's insurer, should be "solely responsible for defending and indemnifying" plaintiffs. Utica states GAIC "provided a full defense to both Clifton and" plaintiffs, as additional insureds, "as required under the Service Contract and under the express terms of the GAIC Policy for the Fogarty Lawsuit."

However, we have held a party may seek a defense under one insurance policy regardless of whether they have coextensive coverage under another. <u>Marshall v. Raritan Valley Disposal</u>, 398 N.J. Super. 168, 176-79 (App. Div. 2008). If Utica believes GAIC owes Utica money, Utica is entitled to seek "contribution" for "the costs of defense and indemnification of their common insured." <u>Id.</u> at 177. But that is a matter between Utica and GAIC; <u>this</u> case is a controversy between Utica and plaintiffs. Plaintiffs had the right to seek a defense under an insurance covenant plaintiffs required Fogarty Brothers obtain

28

for this purpose. The court did not err in finding Utica had a duty to defend extending from its duty to indemnify.

Reimbursement Amount

Utica argues that, even if it had a duty to indemnify or defend, the court erred by concluding Utica "must pay all of the defense costs" for plaintiffs. First, Utica asserts the "Utica Policy is excess over any other primary insurance available to" plaintiffs and, as a consequence, its reimbursement should have been mitigated. Second, Utica argues there were "four categories" of reductions the court should have applied to the award against Utica.

In considering these arguments, the court found no "apportionment among carriers is warranted" and rejected Utica's attempt to mitigate its costs. The court stated: "[Utica] had its chance to monitor" the costs "but did not" because of its "unwise decision . . . to deny coverage." "By taking the position it did, it voluntarily lost control of the expenses of this litigation." As a result, Utica "really can't quibble about efforts undertaken by counsel to discredit Fogarty or anything else. Even so, the expenses were monitored and generally paid by the other carriers. They are deemed reasonable and necessary."

An award of fees and costs lies within "the exercise of sound discretion by the trial court." Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 453 (2015).

Determinations "will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

A coverage dispute between the insurer and insured does not "free the carrier from its covenant to defend, but rather" transposes "its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay." Burd, 56 N.J. at 390. In general, "when the insurer has wrongfully refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims." SL Indus., Inc., 128 N.J. at 214-15. "When the defense costs cannot be apportioned, the insurer must assume the cost of the defense for both covered and non-covered claims." Id. at 215.

The insurer bears the burden to persuade the court "by a preponderance of the evidence" that the insured's fees and costs "can be allocated and, more importantly, how they should be allocated." Hebela, 370 N.J. Super. at 280. When an insurer "was free to defend" against claims but wrongfully chose "not to honor its obligation" to its insured, it will "not now be heard to complain"

about or second-guess the fees incurred in the insured's reasonable, strategic defense. Id. at 278.

Here, Utica argued before the trial court how the costs could be allocated according to each insurer's "share of the total insurance of all parties" taking into account the sum of each policy's limits. Utica asserts that because the limit of its policy was $1 million, and the sum of the applicable policy's limits was $18 million, Utica should pay at most one-eighteenth of the total costs. This calculation is dependent on Utica's argument that its policy is excess over any other primary insurance available to plaintiffs as additional insureds. Utica asserts that GAIC provided the primary insurance to plaintiffs, and therefore the Utica policy was excess. We are unpersuaded.

Utica's Supplement to Coverages A and B, Section IV, Subsection 4.b.(2) provided the Utica policy was excess over any "other primary insurance available to you covering liability for damages arising out of the premises or operations . . . for which you have been added as an additional insured." The GAIC policy stated:

> This insurance is primary to and will not seek contribution from any other insurance available to an Additional Insured under your policy provided that:
>
> **(1)** the Additional Insured is a Named Insured under such other insurance; and

A-0763-24

**(2)** you have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the Additional Insured.

Unless plaintiffs met both elements **(1)** and **(2)**, GAIC's policy was not primary, and the Utica policy could not be excess to it. Utica has not demonstrated nor explained how plaintiffs met either element. Therefore, Utica did not meet its burden to persuade the court how costs should be allocated. Hebela, 370 N.J. Super. at 280.

Next, Utica enumerates "four categories" of reductions the court should have applied to the award against Utica. Those categories are: (1) "the 'smear campaign' waged by" plaintiffs against "Fogarty to try to pin the blame for the accident against him;" (2) "summary judgment motions" filed "against third parties;" (3) "the unsuccessful motion to enforce in this action;" and (4) "the unsuccessful motions to intervene in this action made on behalf of the other insurers." In a footnote without any citation to the record, Utica states the "total amount" of the proposed reductions "was over $200,000 and was detailed in an Addendum to Utica's Proposed Findings of Fact and Conclusions of Law." Utica has not provided these documents in its appellate appendix, but instead attaches over three hundred pages of a largely redacted summary of costs. This court

32

cannot discern which line items fall into any of Utica's four proposed categories of reductions.

We are satisfied the court did not err in allocating to Utica the full costs of plaintiffs' defense.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division

A-0763-24